UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NATHANIEL E. BOSTIC, SR.,

                                             Plaintiff,

            vs.                                              9:04-CV-676
                                                             (C.J. Mordue)
AL SIMONS, Parole Supervisor, et al.,

                                             Defendants.
_____

APPEARANCES                          OF COUNSEL

NATHANIEL E. BOSTIC, SR.
Plaintiff pro se

ELIOT SPITZER                        MARIA MORAN
Attorney General of the              Asst. Attorney General
State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

        In this civil rights action, plaintiff complains that defendants have violated his

constitutional and statutory rights in imposing his conditions of parole and in

postponing his final parole revocation hearing. (Dkt. No. 8)(Second Amended

Complaint (AC)).  Plaintiff also alleges that defendants retaliated against him for the

exercise of his constitutional right to access to courts. AC ¶ 9.  Plaintiff also appears to

challenge the constitutionality of a section of the New York State Executive Law

governing parole revocation, together with the regulations pertaining to the statute. AC ¶¶ 12-14. Plaintiff seeks declaratory, injunctive, and substantial monetary relief.

Presently before the court is the defendants' motion to dismiss this action pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 28). Plaintiff has responded in opposition to the motion. (Dkt. No. 29). For the following reasons, this court will recommend dismissal of the complaint in part.

## DISCUSSION

## 1.    Motion to Dismiss

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)). In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998). In this case, plaintiff has attached a variety of documents as exhibits to the complaint, and the court has considered these documents in making its determination.

2

2.    **Facts**

Plaintiff alleges that defendant Parole Officers Simons and Jackson improperly imposed a special condition of parole that prevented plaintiff from residing with his family from September 10, 2001 until July of 2002. AC ¶¶ 15(a)[1] & Ex. A.  Plaintiff also claims that from December 10, 2003 until April 10, 2004, defendants Bour and Lattimer denied plaintiff the right to a "fair" final parole revocation hearing by "continuously" adjourning the hearing. AC ¶¶ 15(b) & Ex. B.  The amended complaint also appears to allege that the New York Statutes governing parole revocation are somehow unconstitutional because they are "vague, ambiguous, and overbroad."

The Exhibits attached to the amended complaint indicate that plaintiff was paroled on September 10, 2001. Plaintiff's Ex. A.  On September 24, 2001, plaintiff received a copy of various "special conditions" of his release.  *Id.*  The receipt of these conditions was witnessed by defendant Jackson. *Id.*  Included in those conditions was the requirement that he not reside with Donna Capani "without the permission from [his] parole officer." *Id.* ¶ 13D.  Another one of the special conditions stated that plaintiff would "only visit 20 Jefferson Avenue, Binghamton, NY on Saturdays, 12 noon to 6 p.m. for the purpose of visiting my wife and children." *Id.* ¶ 13E.

On November 14, 2003, plaintiff was charged with violating the conditions of his parole. Plaintiff's Ex. B.  Plaintiff has attached letters from the Office of the

---

[1]    The court notes that the main portion of plaintiff's amended complaint contains ¶¶ 15 (a)-(c). Attached to the complaint, and before the exhibits, plaintiff also included a separately-captioned document which appears to be an addendum to the amended complaint, specifying dates for defendants' alleged actions in paragraphs 15(a)-(c).  In plaintiff's response to defendants' motion to dismiss, he now claims that the delay lasted until March of 2005. (Dkt. No. 29).

Broome County District Attorney as exhibits to the amended complaint. Plaintiff's Exs. C1-C2.  The first letter is dated January 12, 2004 and indicates that plaintiff's parole violation was a new criminal charge. Plaintiff's Ex. C1.  The letter was from Assistant District Attorney (ADA) Carole Cassidy and was written to Binghamton City Court Judge John T. Hillis.  The letter stated that ADA Cassidy wished to proceed with plaintiff's criminal case as a "violation prosecution." *Id.*  The letter also stated that ADA Cassidy was going to move to amend the charge from the Class A Misdemeanor of Assault, Third Degree to the violation of Harassment, Second Degree. *Id.*  ADA Cassidy requested that the arraignment be scheduled "immediately" because the prosecution was ready for trial. *Id.*

The second letter attached to the amended complaint is a letter from ADA Cassidy to defendant Lattimer, written on January 14, 2004, the date of plaintiff's criminal trial for the violation behavior. Plaintiff's Ex. C2.  In this letter, the prosecutor states that the People had five witnesses prepared to testify at plaintiff's trial. *Id.* Plaintiff moved to proceed pro se, and the court granted the motion, but appointed the Public Defender as "legal advisor." *Id.*  The letter also states that during plaintiff's cross-examination of the prosecution's first witness, plaintiff became aggressive and ultimately had to be removed from the courtroom, preventing completion of the trial. *Id.*

In the January 14, 2004 letter to defendant Lattimer, ADA Cassidy mentioned that plaintiff's final parole hearing was scheduled for February 11, 2004, and requested that defendant Lattimer send ADA Cassidy a copy of the hearing officer's decision, if

4

the plaintiff's final parole violation hearing were to be held prior to the date that the criminal trial could be rescheduled. *Id.*

Plaintiff has also attached copies of extensions of the final parole revocation hearing date.[2]  One extension was from December 10, 2003 until January 21, 2004. The Division of Parole then asked for the hearing to be changed to January 14, 2004, a ***shortening*** of the time for the hearing.  The next extension is from January 14, 2004 until February 11, 2004, at the request of ***plaintiff's counsel***.  The next document is also not an "extension."  Instead, the notice indicates that the hearing was being rescheduled from February 18, 2004 to ***February 10, 2004***, again, shortening the time until the hearing.

Finally, plaintiff has included as an exhibit, a form-letter from defendant Lattimer to Attorney Craig Fritzsch. Plaintiff's Ex. B.  This letter is dated May 10, 2004 and states that plaintiff's "Final Hearing" is being "adjourned indefinitely at the present time." *Id.*  However, the letter also states that defendant Lattimer was attaching a "First ***Supplementary*** Violation of Release Report." *Id.* (emphasis added).  Plaintiff has ***not*** included the attachment to defendant Lattimer's letter as an exhibit.

## 3.   <u>Service of Process</u>

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m).  The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.*  It is true that a pro se, in forma

---

[2] These notices have not been marked as separate exhibits, and the pages of plaintiff's attachment are not numbered, however, the notices appear after Exhibit C2.

pauperis plaintiff may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

There is support for the proposition that, so long as a pro se plaintiff has properly identified the defendant, the Marshal's failure to effect service automatically constitutes good cause for failure to serve within the appropriate time period. *See Ruddock v. Reno*, 104 Fed. Appx. 204, 206-207 (2d Cir. 2004)(citations omitted). Although *Ruddock* was an "unpublished decision," the other Circuit cases cited by the Second Circuit in *Ruddock* show support for this assertion. *Ruddock*, however, was a case against **federal** defendants, and the court reasoned that it would not be overly burdensome for the Marshal to obtain a current business address from the Department of Justice, since both work for the same employer. *Id.* at 207 (quoting *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). The court in *Sellers* commented that if the Marshal could not obtain the current business address from the Department of Justice, a pro se inmate could not reasonably be expected to obtain an address from the Bureau of Prisons *Id.*

This case presents a different problem. The un-served defendant in this action was a New York State Division of Parole official, not a federal official. In this type of case, additional cooperation from State officials is often necessary to determine current business addresses for defendants such as Simons. On July 29, 2005, the Marshal attempted service on defendant Simons. (Dkt. No. 21). By letter dated August 4, 2005, the Marshal was informed that defendant Simons no longer worked for the Division of

Parole, and the Division of Parole was not authorized to accept service for defendant Simons. *Id.*

The fact that defendant Simons is no longer employed by the Division of Parole makes finding his current address even more difficult. Security issues also arise regarding home addresses of those defendants who retire from law enforcement positions. Thus, defendant Simons was never served in this action, and it appears unlikely that plaintiff will be able to serve this defendant. Although this court could recommend dismissal this action against defendant Simons for failure to serve, the court will also consider the merits of the case against this defendant.

**4.    *Heck v. Humphrey***

Defendants' first argument is that the amended complaint should be dismissed based upon *Heck v. Humphrey*, 512 U.S. 477 (1994) to the extent that the amended complaint challenges "parole procedures." In *Heck v. Humphrey*, the Supreme Court held that a plaintiff may not bring a section 1983 action if a disposition in his favor would necessarily imply the invalidity of a conviction or sentence unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87. *Heck* uses the word "sentence" interchangeably with "continuing confinement" and "imprisonment," thus, any shortening of a term of confinement will be subject to the rule in *Heck*. *See Wilkinson v. Dotson*, 544 U.S. 74, 83-84 (2005) (citing *Heck*, 512 U.S. at 483, 486).

However, in *Wilkinson v. Dotson*, the Supreme Court held that where a plaintiff challenges procedures that will ***not*** necessarily lead to a speedier release, the claim ***is*** cognizable under section 1983. 544 U.S. at 82-83.  In *Wilkinson*, one inmate was challenging the procedures used to determine parole "eligibility" and the other inmate was challenging the procedures for parole "suitability." *Id.*  Both inmates challenged the application of harsher guidelines to their cases than were applicable when the inmates began their sentences of incarceration. *Id.* at 76-77.  Neither inmate was seeking immediate release, and a decision in plaintiffs' favor would only have resulted in a new parole hearing using the appropriate guidelines. *Id.*

In this case, plaintiff challenges the "conditions" of his parole and the adjournment of his parole revocation hearing.  Neither claim would affect the length of his confinement or his sentence.  In *Jacobs v. Ramirez*, 400 F.3d 105 (2d Cir. 2005, the Second Circuit allowed a plaintiff to bring a section 1983 action claiming that the defendants violated his constitutional rights in paroling him to a residence that was unsafe and unsanitary in addition to subjecting him to other allegedly unconstitutional parole conditions.  In *Jacobs*, the Second Circuit did not even discuss *Heck v. Humphrey* in holding that Jacobs stated a claim under section 1983.

This court does note there appears to be a split of authority in other circuits as to whether a plaintiff may bring a section 1983 action prior to or instead of a habeas corpus action, challenging the conditions of his parole. *Compare Lee v. Jones*, CV 05-789, 2006 U.S. Dist. LEXIS 1956 (D. Or. Jan. 9, 2006)(allowing section 1983 action to proceed); *Yahweh v. United States Parole Comm'n*, 158 F. Supp. 2d 1332 (S.D. Fla.

2001)(same) *with Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977)(finding that conditions of parole are part of the inmate's "sentence" and therefore must be challenged by an action for habeas corpus).

   This court finds that after *Willkinson*, the better view is to hold that a challenge to conditions of parole is similar to a challenge to the conditions of confinement, neither of which affects the length of an inmate's sentence and therefore may be brought in a section 1983 action.[3]  Conditions of parole, as opposed to the fact of parole itself are not properly considered part of the parolee's sentence. *Lee v. Jones*, 2006 U.S. Dist. LEXIS 1953 at *12.  Thus, *Heck v. Humphrey* does not apply in this case.[4]

## 5.    Personal Involvement

   It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). With respect to plaintiff's first claim, defendants argue that there is no

---

[3]  Although the court finds that conditions of parole are similar to conditions of confinement, there is no requirement that a parolee exhaust his administrative remedies in challenging parole conditions as would be required of an inmate challenging the conditions of confinement.  The exhaustion requirement of the Prison Litigation Reform Act applies only to those individuals confined in "jail, prison, or other correctional facility" and, thus, has not been statutorily applied to parolees. 42 U.S.C. § 1997e(a). *See also Yahweh v. United States Parole Comm'n*, 158 F. Supp. 2d at 1342 n.30.  The court in *Yahweh* also found that a "common law" exhaustion requirement should not be applied to the parolee challenging his conditions of parole. 158 F. Supp. 2d at 1342-44.  The fact that Yahweh was a federal inmate does not change this analysis.

[4]  *Heck v. Humphrey* would apply if plaintiff were alleging that his parole revocation was based on a violation of the allegedly improper parole condition, however, plaintiff does not appear to be making that claim.  There is no indication that plaintiff's subsequent parole violation had anything to do with the prohibition on living with or visiting his wife and children.

9

indication that any of the defendants were responsible for *imposing* the conditions of which plaintiff is complaining.

In the amended complaint, plaintiff claims that defendants Jackson and Simons were responsible for the imposition of the special conditions of release. A review of plaintiff's exhibits shows that the *receipt* of the "special" conditions of release, including the prohibitions regarding plaintiff's wife and children was *witnessed* by defendant Jackson.[5] *See* Plaintiff's Ex. A. There is no indication in the amended complaint of why plaintiff believes that defendant *Simons* had anything to do with imposing the conditions in question since his name does not appear anywhere on the plaintiff's exhibit.[6] Thus, the court will recommend dismissal as to defendant Simons based on a lack of personal involvement.[7]

The fact that a Parole Officer witnesses plaintiff's receipt of the document does not necessarily show that the Officer was or was not responsible for imposing those

---

[5]   The court notes that defendants' memorandum of law contains an error regarding the defendant who witnessed the receipt of the conditions. Defendants' Memo of Law at 5. Defendants state that "Exhibit A merely establishes that defendant *Lattimer* witnessed plaintiff [sic] acknowledgment ... ." *Id.* (emphasis added). However, it is clear that defendant *Jackson* signed Exhibit A as the witness. This error does not change the analysis of this issue.

[6]   In plaintiff's response to the motion to dismiss, he includes a letter from Attorney Robert Selcov, Esq., to Terrence Tracy, Chief Counsel for the Division of Parole, in which Mr. Selcov states that he is writing on behalf of plaintiff in an effort to obtain permission for him to spend more time with his family. (Dkt. No. 29). The letter is dated May 17, 2002. Attorney Selcov mentions discussing the issue with Parole Officer Benson and states that Officer Benson told Selcov that he would discuss it with the "Area Supervisor, Mr. Simons." The court acknowledges that it cannot consider matters outside the complaint in a motion to dismiss, thus, the court simply notes that the mere mention of defendant Simons as the area supervisor does not change this court's finding there is insufficient personal involvement of this defendant. Because this is a motion to dismiss, and the court will recommend dismissal without prejudice, plaintiff can attempt amend his amended complaint to allege the requisite personal involvement.

[7]   In any event, defendant Simons has not been served in this action.

conditions.[8]  Because defendants' motion is based on the pleadings alone, however, this court cannot find that defendant Jackson was or was not personally involved in imposing the conditions of release, the receipt of which he witnessed.  Thus, the court will not recommend dismissal of plaintiff's first claim as against defendant Jackson based on the lack of personal involvement.

Plaintiff alleges that defendants Lattimer and Bour were responsible for the postponement of plaintiff's parole hearing.[9]  However, based on the attachments to the amended complaint, the **only** named defendant who seems to have been involved in any schedule changes (extensions or otherwise) is defendant Lattimer.  Although there is one exhibit signed by defendant Bour, this appears to be the initial notice of plaintiff's final revocation hearing, scheduled for December 10, 2003.[10]  There is absolutely **no indication** that any of the other defendants were involved in "postponing" plaintiff's parole hearing.

In his response to defendants' motion plaintiff does not elaborate on who might have been responsible for postponing his final revocation hearing.  Thus,

---

[8]   The regulations provide that special conditions of parole may be imposed by a member of members of the Board of Parole; authorized representatives of the Division of Parole; or Parole Officers. N.Y. COMP. CODES R. & REGS. tit. 9, § 8003.3.  Thus, in this case it is impossible to determine who imposed the special conditions based on plaintiff's submission.

[9]   The body of the amended complaint actually does not indicate which defendants were "responsible" for the improper adjournments. AC ¶ 15(B).  Plaintiff only refers to the notices contained in his Exhibit B.  Plaintiff's addendum to the amended complaint states that the responsible defendants were Lattimer and Bour.

[10]   In fact, plaintiff alleges that the dates of the improper "adjournment" were from ***December 10, 2003*** until April 10, 2004. Plaintiff's Addendum to ¶ 15(C).  Defendant Bour's notice, sent to Attorney Jay L. Wilber, stated that plaintiff's final parole revocation hearing was scheduled for ***December 10, 2003***. Defendant Bour's name does not appear on any of the extensions.

11

plaintiff's second claim may be dismissed as against all defendants except defendant Lattimer based upon a lack of personal involvement.

**6.      Conditions of Parole**

Parole is not freedom, rather, a parolee is considered a prisoner who has been allowed to serve a portion of his sentence outside the prison walls. *See Baker v. Welch*, 03 Civ. 2267, 2003 U.S. Dist. LEXIS 22059, *36-38 (S.D.N.Y. Dec. 10, 2003). Parolees enjoy only conditional liberty and have no liberty interest in being free from "special conditions" of parole. *Id. See also Pena v. Travis*, 01 Civ. 8534, 2002 U.S. Dist. LEXIS 24709, *35 n.5 (S.D.N.Y. Dec. 27, 2002).  Constitutional rights such as freedom of travel and association may be limited without violated the parolee's constitutional rights. *Id.*

The government may infringe the First Amendment rights of prisoners and parolees as long as "the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment." *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972), *cited in Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006). First Amendment restrictions must further a legitimate interest of the parole regime. *Best v. Nurse*, CV 99-3727, 1999 U.S. Dist. LEXIS 19708, *8-9 (E.D.N.Y. Dec. 19, 1999)(citing *Birzon*, 469 F.2d at 1243).

In *Farrell*, the court was considering a restriction on a parolee's ability to possess pornographic material. 449 F.3d at 476.  In *Yahweh*, the court was considering a special condition that restricted the parolee's religious rights. 158 F. Supp. 2d at 1335.  In *Birzon*, the court was considering a restriction upon the parolee's right to

12

freedom of association.  In *Best v. Nurse*, the court was considering a condition

restricting the parolee's freedom of speech in conjunction with the distribution of

leaflets critical of the parole system.

    In his response to defendants' motion to dismiss, plaintiff has submitted a copy

of *Tremper v. Ulster County Dep't of Probation*, 160 F. Supp. 2d 352 (N.D.N.Y.

2001), in which District Court Judge David N. Hurd granted a preliminary injunction

in favor of plaintiffs who claimed that restrictions upon a probationer's right to live

with her family infringed upon the plaintiff's constitutional rights.  Judge Hurd held

that the challenged probation condition burdened a fundamental right, and therefore, a

heightened level of scrutiny was required. *Id.* at 357.  The court further stated that

"something more than a reasonable relationship to rehabilitation must be shown to

justify such a complete impediment to plaintiff's fundamental right." *Id.*

    In this case, one of the special conditions was that plaintiff could not live with

an individual named Donna Capani[11] "without permission from [his] parole officer."

Plaintiff's Ex. A.  The second special condition was that plaintiff would only visit 20

Jefferson Avenue in Binghamton, New York on Saturdays between noon and 6:00 p.m.

for the purpose of visiting his wife and children. *Id.*  It is clear that these restrictions

***limited*** plaintiff's association with his family.  It is completely unknown why these

special conditions were imposed.  It does not appear that there was a "complete"

impediment to the fundamental right since plaintiff could visit his family on a limited

basis.  However, it is ***impossible based on the pleadings*** to determine the purpose for

the restrictions and whether the restrictions were reasonable.  Thus, the court will not

---

[11]   The court assumes that Donna Capani is plaintiff's wife.

recommend dismissal of this claim *on the pleadings alone* because without more, the court cannot find that plaintiff could prove no set of facts that would entitle him to relief.

7.    **Adjournment of Final Revocation Hearing**

In the amended complaint, plaintiff claims that defendants violated his constitutional rights by postponing his final parole revocation hearing for approximately five months, from December 10, 2003 until April 10, 2004.  In his response to defendants' motion to dismiss, plaintiff alleges that the delay was until March of 2005.  Plaintiff states that these defendants "purposefully and deliberately" denied plaintiff the right to a "fair" final parole revocation hearing.  Plaintiff has attached various exhibits, purportedly in support of his claim.  These exhibits consist of letter-notices to plaintiff's counsel, signed by defendant Lattimer, rescheduling the final revocation hearing.  However, as stated above, all but two notices indicate that the extensions of time were requested by the *parolee.*  One letter changing the date of the hearing pursuant to a request from the Division of Parole had the effect of *shortening* the time to the hearing.

The last letter (chronologically) was written on May 10, 2004, stating that a "supplementary" violation of release report was being attached, and that the final hearing was being "adjourned indefinitely." Plaintiff's Ex. B.  As stated above, plaintiff did not include the attachment as an exhibit.  Plaintiff's amended complaint alleges only that defendants improperly postponed his hearing until April 10, 2004.[12]

---
[12]   There is no allegation in the body of the amended complaint regarding what happened to plaintiff's case after April 10, 2004. There is only the letter from defendant Lattimer in May of 2004 indicating that the adjournment would be indefinite.

In plaintiff's response to defendants' motion to dismiss, he now states that he is claiming that the delay was until March *2005*, however this change in the facts does not change this court's finding that the amended complaint, as written, does not state a claim.

The court would first note that although plaintiff seems to allege that the five months between December 10, 2003 and April 10, 2004 was inappropriate delay, the regulations state that the final revocation hearing must be held within 90 days of a determination that there is probable cause to believe that a violation has occurred. N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.17(a).  Plaintiff's notice of parole violation indicates that a preliminary hearing was to be held on November 20, 2003. Plaintiff's Ex. B. Assuming that probable cause was found at the preliminary hearing, the regulations provide that the Division of Parole would have had 90 days from November 20, 2003 to schedule a final hearing.  Therefore, assuming only the facts provided by plaintiff, the Division of Parole would have had until approximately February 18, 2004 to schedule the final hearing.

The fact that the final hearing was initially scheduled for December 10, 2003 does not change the fact that the Division of Parole would have been entitled to the entire 90 days.  Assuming that no extensions of time were requested, the allegedly inappropriate delay would have begun on February 18, 2004.  The court also notes that the regulations carefully outline the procedures for requesting adjournments. *Id.* § 8005.17(c).

Parolees are entitled to minimum due process protections prior to revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471, 487-89 (1972).  In *Calhoun v. New York State Division of Parole Officers*, 999 F.2d 647, 652 (2d Cir. 1993), the Second Circuit held that the New York procedures for parole revocation ***meet the constitutional requirements***.  In the amended complaint, plaintiff never specifies ***why*** he believes the statute and regulations are vague and overbroad.  Thus, to the extent that plaintiff challenges the parole revocation scheme itself, his claim may be dismissed.

Plaintiff basically challenges the alleged delay in holding the final parole revocation hearing.  Although plaintiff gives the court two dates between which he alleges the delay, he never states that he had a final parole revocation hearing, and the letter dated May 10, 2004 indicates that a supplementary "violation of release report" caused the final hearing to be adjourned indefinitely. Plaintiff's Ex. B.  Now plaintiff alleges that the delay was until March of 2005.

It has been held that delay in scheduling a final parole revocation hearing does ***not*** rise to the level of a constitutional due process violation. *Swiggett v. Duncan*, 01 Civ. 11883, 2004 U.S. Dist. LEXIS 25254, *4-5 (S.D.N.Y. Dec. 14, 2004).  A deviation from the New York State timing requirement is a state law procedural requirement that does not rise to the level of a constitutional mandate. *Id.*  In any event, the court notes that, according to the exhibits submitted by plaintiff, much of the delay in scheduling this plaintiff's final parole hearing, according to the amended complaint, was due to extensions requested by plaintiff or his counsel.

The essence of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *See Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004). In this case, it should be noted that plaintiff's violation behavior was the subject of a criminal trial for harassment. Plaintiff certainly had the opportunity to be heard at his criminal trial for the parole violation behavior, however, ADA Cassidy's letter, submitted by plaintiff, indicates that ***plaintiff's behavior*** caused the trial to be suspended.

Thus, any delay in his final parole revocation hearing did not violate plaintiff's right to due process, and the court will recommend dismissing the amended complaint. However, now that plaintiff is attempting to allege an even greater delay, the court will recommend dismissing the amended complaint without prejudice to plaintiff filing an amended complaint including additional information regarding the delay in his parole hearing.

## 8.   <u>Retaliation</u>

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the protected conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). There must be a causal connection between the protected conduct and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). The "adverse" action must be conduct "that would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights." *Id.* at 353.  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[13]

 The amended complaint in this case contains ***one*** statement that the defendants committed "said" acts in retaliation for plaintiff's action challenging the condition of parole prohibiting plaintiff from living with or visiting his wife and children.  It is unclear what actions plaintiff claims are retaliatory.  His first claim is that defendants Simons and Jackson prevented plaintiff from living with or visiting his wife and children.  Since this alleged conduct must have occurred prior to plaintiff challenging the condition, this condition could not be the retaliatory action.

 In his response to the motion to dismiss, plaintiff states that defendant Jackson told plaintiff on September 10, 2001 that plaintiff "got a lot of big people upset with his pending lawsuit."  However, there is no indication what pending lawsuit he was referring to, and it could not have been a lawsuit about a condition that had not yet been imposed.

 Plaintiff second claim is that the defendants improperly adjourned his final parole revocation hearing in retaliation for the exercise of plaintiff's right of access to courts.  As defendants note, the special condition of parole was imposed in 2001, and

---

[13]  The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002).

plaintiff did not violate his parole until November of 2003.  The adjournments of plaintiff's final parole revocation hearing began in December of 2003.  Although in his response to the motion to dismiss, plaintiff states that he "filed a notice of intent" against the Division of Parole in December of 2003, as stated above, the 2003 and early 2004 adjournments of plaintiff's final revocation hearing were requested by plaintiff or his attorney, and the early termination of the criminal action against plaintiff was due to his own inappropriate conduct in court.

First, plaintiff has not sufficiently alleged that he engaged in protected conduct.  Second, even assuming that plaintiff did engage in some protected conduct, he has not sufficiently alleged either an adverse action by defendants or a causal nexus between the protected conduct and an adverse action.  There is absolutely no indication, based upon *plaintiff's own submissions* that defendants "retaliated" against plaintiff for any constitutionally protected actions.  Thus, plaintiff's retaliation claim may be dismissed.

As stated above, however, plaintiff's response to defendants' motion is filled with facts that were not stated, or were stated differently, in the amended complaint.  Because this court is recommending dismissal without prejudice, if plaintiff believes that he can state a claim for retaliation, he may attempt to file another amended complaint, specifying how the named defendants were aware of plaintiff's constitutionally protected actions and how the delay was causally related to that protected conduct.  Procedurally, the facts in this case would be much clearer if defendants had made a summary judgment motion rather than a motion to dismiss.

**9.      Equal Protection and 42 U.S.C. §§ 1981 and 1982**

The Equal Protection clause provides that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Absent a suspect classification, the courts must presume that distinctions made between groups are constitutional as long as they are rationally related to a legitimate state interest. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)(suspect classifications include race, religion or alienage).

Although plaintiff uses the term "equal protection," he neither specifically alleges that he belongs to a "suspect class," nor does he allege how he was treated differently than any other person who was similarly situated.[14]  Basically, plaintiff in this case uses the words "discriminatory practices" in a conclusory fashion, without any explanation of what he means or to which of defendants alleged "practices" he is referring.  He also does not mention any other individual or group of individuals who were similarly situated, but were treated differently than he was.  Thus, plaintiff does not state an equal protection claim.

The same rationale applies to any claims that plaintiff might be trying to make under 42 U.S.C. §§ 1981 and 1982.  Section 1981 provides that all persons shall have the same rights to make and enforce contracts, to sue, be parties, and enjoy the full benefit of the laws as white citizens. 42 U.S.C. § 1981(a).  Section 1982 provides that all citizens of the United States shall have the same rights to hold and dispose of property. 42 U.S.C. § 1982.  Assuming that plaintiff in this case is not a white citizen,

---

[14] Even if plaintiff is a member of a suspect class, there is no allegation that he was treated differently than other individuals based upon his membership in the suspect class.

he still has not alleged that he was treated differently *because of* his race.  Thus, plaintiff has not stated a claim under either section 1981 or 1982.

**10.   Thirteenth Amendment**

The Thirteenth Amendment provides that neither slavery, nor involuntary servitude shall exist in the United States, "except as punishment for a crime whereof the party shall have been duly convicted." U.S. CONST. amend XIII, § 1.  As stated above, parole is considered part of an individual's criminal sentence, and the Division of Parole is entitled to impose "conditions" by which the parolee must abide. *See Baker v. Welch, supra*.  Additionally, the Thirteenth Amendment has been interpreted to cover situations in which an individual is forced to *work* or be subject to legal sanctions. *See United States v. Kosminski*, 487 U.S. 931, 942-44 (1988)(discussing Thirteenth Amendment case law).

Plaintiff in this case was on parole, thus, conditions of parole would not be considered "involuntary servitude."  Additionally, plaintiff's claims are not related in any way to "working" or being forced to work.  Thus, any claims purportedly based on the *Thirteenth Amendment* may be dismissed *with prejudice*.

**11.   Absolute Immunity**

Defendants allege that according to plaintiff, defendants Bour and Lattimer were only involved in the parole revocation process, and therefore, are entitled to absolute immunity.  Judges and prosecutors are entitled to absolute immunity in conjunction with actions taken in a judicial and prosecutorial capacity. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Absolute immunity has also been extended to parole

21

officials when they are engaging in conduct that is either "functionally related" to conduct performed by a judge or when they engage in conduct that is "functionally related" to conduct performed by a prosecutor. *Id.*

In making this determination, the court looks not only to the title of the official, but rather to the acts or responsibilities that the official performed. *Id.* at 287-88. When a parole official performs the "quasi-judicial" function of granting, denying, or revoking parole, that official has been afforded absolute immunity. *Id.* (citing *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)).  Parole officers who initiate and present parole revocation proceedings have been afforded absolute immunity because this function has been held to be "prosecutorial" in nature. *Id.* at 287 (citing *Scotto*, 143 F.3d at 112).  However, *no* absolute immunity attaches when the function performed is administrative, such as when the parole officer recommended that a warrant be issued for the parolee's arrest. *Id.* at 288 (citing *Scotto*, 143 F.3d at 111-13).

In this case, plaintiff is not challenging the decision to grant, deny, or revoke parole, nor is plaintiff challenging the decision to initiate the parole revocation process or the presentation of the parole revocation case to the hearing officer.  Plaintiff is challenging a delay in scheduling and affording plaintiff the final parole revocation hearing.  The function of scheduling the hearing is considered administrative, and therefore, the defendants would not be entitled to absolute immunity for this conduct. Therefore, the court will not recommend dismissal on the basis of absolute immunity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss the complaint (Dkt. No. 28) be **DENIED**, as to the claim against defendant **JACKSON** regarding the conditions of plaintiff's parole, and it is further

**RECOMMENDED,** that defendants' motion to dismiss the complaint (Dkt. No. 28) be **GRANTED**, and the complaint **DISMISSED AS TO ALL OTHER CLAIMS AS AGAINST ALL OTHER DEFENDANTS** as stated in the above decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 22, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge